UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ABIGAIL GRASON, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | No. 15 C 09290 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DANIEL HARDY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Abigail Grason was involuntarily committed to the Elgin Mental Health Center after a jury found her not guilty by reason of insanity at the conclusion of a criminal trial. R. 21, Am. Compl. ¶ 26.[1] Grason has since filed a civil-rights suit, 42 U.S.C. § 1983, against thirteen Elgin employees,[2] alleging that they violated her Eighth[3] and Fourteenth Amendment rights.[4] Am. Compl. ¶¶ 81-85. The Defendants now move to dismiss the Eighth Amendment claim for failure to state a claim. Fed. R. Civ. P. 12(b)(6); R. 35, Defs.' Mot. Dismiss. For the reasons

---

[1] Citations to the record are indicated by "R.," followed by the docket entry and, when necessary, a page or paragraph number.

[2] The named defendants are Daniel Hardy, Jeff Pharis, Ulsa Kartan, Debbie Giardina, Richard Malis, Carol Rosanova, Jacqueline Jordan, Carol Trelka-Rojas, Wayne Beyer, Daniel Malone, Maureen Oliver, Jeff Pilario, and Jo Pflenger-Schultz. Am. Compl. ¶¶ 6-18. Grason originally sued all of these employees in their individual *and* official capacities, *see id.*, but she has since voluntarily dismissed her official capacity claims, R. 39, Pl.'s Resp. Br. at 1 n.1.

[3] When the Court refers to the Eighth Amendment in this Opinion, that really means the Eighth Amendment as incorporated through the Fourteenth Amendment against state and local governments. *See Robinson v. California*, 370 U.S. 660, 667 (1962).

[4] Grason's Amended Complaint also contained two state-law claims, Am. Compl. ¶¶ 86-92, but she has since voluntarily dismissed both of them, Pl.'s Resp. Br. at 1 n.1. The Court has federal-question subject matter jurisdiction over the remaining claims.

stated below, the partial motion to dismiss is granted and Grason's Eighth Amendment claim is dismissed with prejudice.

## I. Background

For the purpose of deciding this motion to dismiss, Grason's factual allegations are accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Grason was initially admitted to the Elgin Mental Health Center in October 2006. Am. Compl. ¶ 22. At that time, she was diagnosed with hypothyroidism and prescribed medication for treatment. *Id.* ¶ 23-24. A few months later she was transferred to Cook County Jail. *Id.* ¶ 25.

In March 2008, Grason was involuntarily committed to Elgin after a criminal jury found her not guilty by reason of insanity. Am. Compl. ¶ 26. Four years later, she was placed under the care of the Hartman unit treatment team.[5] *Id.* ¶ 27. The treatment team met weekdays to discuss and make decisions (as a unified body) about Grason's medical care. *Id.* ¶¶ 28-29.

### A. Tegretol Dosage

Between March and June 2012, Defendant Jacqueline Jordan (Grason's psychiatrist at the time) began increasing Grason's dosage of the medication Tegretol. Am. Compl. ¶¶ 30, 32-33. Jordan allegedly threatened Grason with indefinite confinement in order to get her to agree to the increase. *Id.* ¶ 35.

---

[5]Members of the treatment team, over time, included psychiatrists Jacqueline Jordan, Ulsa Kartan, Carol Rosanova, and Richard Malis; recovery specialist Wayne Beyer; social workers Daniel Malone, Debbie Giardina, and Maureen Oliver; nurse manager Jeff Pilario; and activity therapist Jo Pflenger-Schultz. *See* Am. Compl. ¶¶ 6-8, 10-17.

In June 2012, Grason began experiencing episodes of double vision. Am. Compl. ¶ 36. These episodes lasted for hours and occurred as often as two times per day, five days per week. *Id.* ¶ 39. The treatment team did not tell Grason that these episodes could be a consequence of the increased dosage of Tegretol; instead, Grason was referred to a neuro-ophthalmologist. *Id.* ¶ 38.

Grason was not actually seen by a neuro-ophthalmologist, however, until December 2014—nearly two years after she first started experiencing double vision.[6] Am. Compl. ¶ 54. The neuro-ophthalmologist did not find any neurological abnormalities that would cause Grason to experience double vision, and so recommended that Grason's dosage of Tegretol be lowered. *Id.* ¶¶ 54, 56. Only then did the treatment team act. *Id.* ¶ 57.

Shortly after her dosage was lowered, Grason stopped experiencing double vision. Am. Compl. ¶ 58. Grason's hypothyroidism, however, had worsened by this time. *Id.* ¶ 59. The treatment team had not told Grason that Tegretol is not recommended for patients with thyroid disorders. *Id.*

### B. Lithium Prescription

In January 2014, Defendant Ulsa Kartan (who had replaced Jordan as Grason's psychiatrist, Am. Compl. ¶ 43) proposed that Grason take lithium as a mood stabilizer. *Id.* ¶ 62. Grason did not want to take lithium, but Kartan told Grason that refusing to take lithium would negatively impact her ability to be released from Elgin in the future. *Id.* Defendant Daniel Hardy (Elgin's Medical

---

[6]In the interim, members of the treatment team had refused to take Grason off of Tegretol or to lower the dosage, Am. Compl. ¶ 48, despite blood tests revealing that Grason's blood levels for Tegretol were in the high toxic range, *id.* ¶ 47.

Director) ultimately directed Kartan to prescribe the lithium. *Id.* ¶ 63. Hardy had never examined Grason, nor was he familiar with Grason's medical history. *Id.*

Grason requested a second opinion regarding the prescription but that request was rejected. Am. Compl. ¶ 66. Because Grason felt coerced and threatened, she decided to take the lithium. *Id.* ¶ 67. At no point in time did a member of the treatment team inform Grason of the possible side effects of lithium, or of the dangers of lithium to patients with hypothyroidism. *Id.* ¶¶ 63-64.

After she started taking lithium, Grason experienced abnormal thyroid readings, general neck pain, soreness in her throat, and difficulty swallowing. Am. Compl. ¶ 68. As a result, she was sent to an endocrinologist who ordered an ultrasound. *Id.* The ultrasound revealed a goiter and multiple nodules on Grason's thyroid. *Id.* ¶ 69. The endocrinologist initially diagnosed Grason with Hashimoto's disease, but a biopsy of her thyroid later revealed that Grason had thyroid cancer. *Id.* ¶¶ 70-72. She received a thyroidectomy in November 2015. *Id.* ¶ 73.

### C. Procedural History

Grason has filed suit against thirteen members of Elgin's staff (in their individual capacities), alleging that they were deliberately indifferent to Grason's medical needs and denied her adequate medical care in violation of the Eighth and Fourteenth Amendments. Am. Compl. ¶ 83. The Defendants now move to dismiss the Eighth Amendment aspect of Grason's § 1983 claim. Defs.' Mot. Dismiss.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

III. Analysis

Section 1983 provides a private cause of action against a person, who, acting under color of state law, deprives an individual of any "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Lividas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting 42 U.S.C. § 1983). But § 1983 is not itself the substantive basis for a constitutional or federal right. Rather, it is a procedural vehicle for bringing suit to "vindicat[e] federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted). Thus, the first step in a § 1983 action is identifying the specific constitutional right allegedly infringed. *Id.* at 394.

Here, Grason alleges that the way in which the named Elgin employees addressed her medical needs violated both the Eighth and Fourteenth Amendments. *See* Am. Compl. ¶ 83. The Defendants contend, however, that the Eighth Amendment claim fails as a matter of law because the Eighth Amendment does not apply to those involuntarily committed following a verdict of not guilty by reason of insanity.[7] R. 36, Defs.' Br. at 5-6; R. 45, Defs.' Reply Br. at 1-2. The Court agrees.

The constitutional source of a confined person's right to receive medical care depends on her relationship to the State at the time of the encounter. *See Webber v. Pharis*, 2015 WL 475956, at *3 (N.D. Ill. Feb. 3, 2015). For example, the Fourteenth Amendment protects persons involuntarily committed as a result of civil

---

[7]The Defendants do not dispute that Grason has properly stated a claim for violation of her Fourteenth Amendment rights. *See* R. 36, Defs.' Br. at 6. So there is no need (yet) to discuss which specific right (or rights) are at issue under the Fourteenth Amendment.

commitment proceedings, *see Youngberg v. Romeo*, 457 U.S. 307, 314-316 (1982), while the Eighth Amendment protects persons imprisoned following a formal adjudication of guilt, *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." (internal quotation marks omitted)). This distinction, according to the Supreme Court, turns on the fact that the "conditions of [incarcerated persons'] confinement are designed to punish"; because involuntary civil commitment is not designed to punish, the "involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals." *Youngberg*, 457 U.S. at 321-22.

The Supreme Court and the Seventh Circuit have yet to directly address whether it is the Eighth Amendment or the Fourteenth Amendment that protects persons involuntarily committed following a verdict of not guilty by reason of insanity. But the Supreme Court has suggested a similarity between those civilly committed and those committed following a verdict of not guilty by reason of insanity. *See Jones v. United States*, 463 U.S. 354, 368 (1983) (the purpose of commitment following an insanity acquittal, "*like that of civil commitment*," is to "treat the individual's mental illness" (emphasis added)). And it has repeatedly stated that commitment following a verdict of not guilty by reason of insanity is not punitive. *Jones v. United States,* 463 U.S. 354, 368 (1983); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *cf. People v. Pastewski*, 647 N.E.2d 278, 283 (Ill. 1995) (the

7

purpose of commitment following an insanity acquittal is to "treat the individual's mental illness, and at the same time protect him and society from his potential dangerousness" (internal quotation marks omitted)). This makes sense under Illinois's statutory scheme. Under Illinois law, insanity is an affirmative defense that a defendant must prove by clear and convincing evidence. 725 ILCS 5/6-2(e). When that burden is met, the defendant is found "not guilty by reason of insanity" and the trial court enters a judgment of acquittal. *Id.* § 5/104-25(c). This is distinct from when a defendant is found "guilty but mentally ill." A defendant who has been found guilty but mentally ill "is not relieved of criminal responsibility," *id.* § 5/6-2(c), and the trial court "may impose any sentence upon the defendant which could be imposed pursuant to law upon a defendant who had been convicted of the same offense without a finding of mental illness," *id.* § 5/5-2-6(a). Here, Grason was acquitted, so she may not be punished. *See Foucha,* 504 U.S. at 80. Accordingly, Grason may not state a claim for relief under § 1983 for infringement of her Eighth Amendment rights.[8]

---

[8]The dismissal of the Eighth Amendment claim is not likely to hurt Grason's overall chances of winning the case. After all, it is unclear what extra protections (if any) the Eighth Amendment would offer that the Fourteenth Amendment does not. *See Youngberg*, 457 U.S. at 315-16 ("If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must [violate the Fourteenth Amendment] to confine the involuntarily committed—who may not be punished at all—in unsafe conditions."). Indeed, the Supreme Court has said that individuals subjected to involuntary civil commitment are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* at 322 (applying the professional judgment standard rather than the deliberate indifference standard to civilly committed plaintiff's § 1983 claim). So, if anything, the Fourteenth Amendment supplies Grason more protection than the Eighth Amendment.

## IV. Conclusion

The Defendants' partial motion to dismiss, R. 35, is granted and Grason's Eighth Amendment claim is dismissed with prejudice. Only the Fourteenth Amendment claim remains. The status hearing on July 27, 2017 remains as scheduled.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 30, 2017